United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GONZALEZ ALEJANDRO,<br>　　　　Petitioner,<br>　v.<br>VINCENT ADAMS,<br>　　　　Respondent. | Case No. 5:15-cv-02348-EJD<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY**<br><br>Re: Dkt. No. 1 |

## I. INTRODUCTION

Petitioner Alejandro Gonzalez ("Petitioner") has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging his state conviction. Petition ("Pet."), Dkt. No. 1, at 4. Respondent filed an answer on the merits (Dkt. No. 9) and Petitioner filed a traverse (Dkt. No. 14). For the reasons set forth below, the Petition for Writ of Habeas Corpus is DENIED.

## II. BACKGROUND

On August 10, 2011, a jury found Petitioner guilty under California Penal Code § 269 of four counts of aggravated sexual assault of a child under fourteen years old by a perpetrator more than ten years older than the child. Resp. Ex. 1 at 439-44, Dkt. No. 10-3. He was sentenced to sixty years to life in state prison by the trial court. Resp. Ex. 1 at 465-67. On December 17, 2013, the California Court of Appeal, Sixth Appellate District ("Court of Appeal") affirmed the judgment in an unpublished decision. Resp. Ex. 6, Dkt. No. 11-2. On February 26, 2014, the California Supreme Court denied review. Resp. Ex. 8, Dkt. No. 11-2.

### A. Statement of Facts

From 1996 to 1998, Alan and Melissa were dropped off at Petitioner's house to be watched by Petitioner's wife who provided childcare. Resp. Ex. 6 at 2. Alan was born in 1989 and Melissa was born in 1993. Id. According to the prosecution, the children were dropped off between 4:15 to 4:30 a.m. Id. According to the defense, the children were dropped off between 4:50 to 5:00 a.m. Id. at 5. Once the children were dropped off, they would sleep in the living room of Petitioner's house. Id. at 2. It was alleged that on multiple occasions before Petitioner would leave for work, he touched and used his finger to penetrate Melissa's vagina. Id. at 2. The time at which Petitioner would leave for work in the morning was disputed. Id. at 3, 5. Petitioner's wife also watched another child named Lidia, who was a few months older than Melissa, at the time she watched Melissa and Alan. Id. at 2. In 1998, Lidia told her parents that Petitioner touched her vagina, it was reported to the police, and a jury trial followed in 1999. Id. at 3-4. The trial ultimately ended with a split jury decision of 11-1 in favor of acquittal. Id. at 10.

When Melissa was fourteen, at least ten years after Petitioner's wife stopped providing childcare, Melissa reported that when she was sleeping at Petitioner's house in the early morning during childcare "she was often awakened by pain" because Petitioner "was sticking his finger in her vagina." Id. at 2. Based on these allegations, the present case followed. At trial, the witnesses included Lidia and her mom, Doris S. Id. at 3. The jury in the instant case was informed that there had been a previous trial in which Petitioner was accused of sexually abusing Lidia, but that the previous jury had not reached a decision. Id. at 4. The jury in the instant case was not informed about the fact that the numerical split of the previous jury was 11-1 favoring acquittal. Id.

### III. LEGAL STANDARD

28 U.S.C. § 2254 states that a federal judge may only entertain a petition for habeas corpus if the Petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court outcome: "(1) resulted in a decision that was contrary to, or

Case No.: 5:15-cv-02348-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

2

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"State court decisions [need to] be given the benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the federal court cannot grant habeas relief unless what the state court ruled was "contrary to, or involved an unreasonable application of" Supreme Court precedent. 28 U.S.C. § 2254(d)(1). AEDPA sets a high standard which can only be reached "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the] Court's precedents." Harrington v. Richter, 562 U.S. 86, 102 (2011). Federal habeas relief cannot be granted unless the factual determination is deemed unreasonable "in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Williams, 529 U.S. at 412; Brewer v. Hall, 378 F.3d 952, 955 (9th Cir. 2004). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003), overruled on other grounds by Lockyer v. Andrade, 538 U.S. 63 (2003).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if

Case No.: 5:15-cv-02348-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

3

the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409. The federal habeas court must presume to be correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Here, the California Supreme Court summarily denied Petitioner's petition for review. Resp. Ex. 8. The California Court of Appeal addressed the claims in the instant petition. Resp. Ex. 6. The Court of Appeal thus was the highest court to have reviewed Petitioner's claims in a reasoned decision, and accordingly it is the Court of Appeal's decision that this Court reviews herein. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005).

The Supreme Court has vigorously and repeatedly affirmed that, under AEDPA, a federal habeas court must give a heightened level of deference to state court decisions. See Hardy v. Cross, 565 U.S. 65 (2011) (per curiam); Harrington v. Richter, 131 S. Ct. 770, 783-85 (2011); Felkner v. Jackson, 131 S. Ct. 1305 (2011) (per curiam). As the Court explained: "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" Id. at 1307 (citation omitted). With these principles in mind regarding the standard and limited scope of review in which this Court may engage in federal habeas proceedings, the Court addresses Petitioner's claims.

## IV. DISCUSSION

Petitioner asserts two grounds for relief: (1) that the trial court's failure to allow him to introduce the numerical split of the hung jury from Lidia's trial denied him his Sixth Amendment right to cross examine an adverse witness; and (2) that the trial court's refusal to dismiss his case pursuant to California Penal Code § 654 denied him due process. For the reasons discussed below, Petitioner does not bring claims upon which relief can be granted.

### A. Claim One

Petitioner's first claim for relief is that he was denied his right under the Sixth Amendment to cross examine an adverse witness because the trial court did not permit him to introduce the numerical split of the hung jury in Lidia's trial to impeach the credibility of Lidia's expected testimony in this case. Pet. at 18-19. In particular, Petitioner argues that a defendant's Sixth Amendment right to cross-examine adverse witnesses "includes not only the fact of motive or bias, but the *intensity* of that motive or bias . . . [T]he defense must also be allowed to establish how and why the person 'lacked that *degree* of impartiality expected of a witness at trial.'" Id. (citing Davis v. Alaska, 415 U.S. 308, 318 (1974)).

In assessing the numerical split, the Court of Appeal summarized the relevant procedural background as follows:

> Defendant next contends that the trial court erred in excluding evidence of the numerical split of the jury in his previous trial for the offenses against Lidia.
>
> Prior to trial, defense counsel requested that he be allowed to impeach the credibility of Lidia's expected testimony by showing that the jury in the previous trial ended in an 11 to 1 impasse in favor of acquittal. The following exchange then occurred between the trial court and defense counsel: "THE COURT: . . . What inference can a reasonable juror make if it split ten-to-two, one way or another, ten-to-two for guilty. Is she more likely to have been telling the truth, more likely to have not been telling the truth. Ten-to-two not guilty, when the jurors heard her when she was obviously ten years younger? I'm not sure how it helps the jury. [¶] Even if they heard she testified earlier, what's the relevance of the numbers? [¶] . . . [¶] DEFENSE COUNSEL: My honest answer is, I don't know. I hadn't thought about it as to whether or not the split, the numbers of the split made a difference. I think the fact they didn't get a conviction based on what she originally alleged, would go to

Case No.: 5:15-cv-02348-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

5

bias and credibility, which would be relevant to the jury, whether or not the numbers were relevant to their—their number of votes for not guilty and number of votes for guilty. I don't know if the jurors would necessarily see that as a negative or positive. [¶] I think the way that I would have phrased that is probably that the jury mistried in favor of acquittal versus an exact number, if you wanted to avoid giving a number, thinking the number isn't relevant. I just hadn't thought about that at all." The trial court ruled, ". . . I'm inclined against allowing the jury split to go to the jury because I don't know what useful inference a juror can make from that. And to the extent it doesn't have a useful inference, it sounds kind of irrelevant to me. As to the split, at least my tentative ruling is that it not go before the jury."

At trial, Doris S. testified that it "really" bothered her that the previous jury did not reach a decision, that she was not "mad," but "disappointed," and that it made her "feel like justice wasn't served." Lidia testified that she had only learned that the jury did not reach a decision a year before the present trial. The parties stipulated that "there was a trial here in [Santa Clara] County where the defendant was charged with sexually abusing L[i]dia and that jury did not reach a verdict."

" 'Relevant evidence' means evidence . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) In determining the relevancy of evidence, courts consider whether the evidence tends " ' "logically, naturally, and by reasonable inference" to establish material facts such as identity, intent, or motive. [Citations.]' [Citation.]" (People v. Carter (2005) 36 Cal. 4th 1114, 1166.) "The existence or nonexistence of a bias, interest, or other motive" (Evid. Code, § 780, subd. (f)) is relevant to the credibility of a witness. This court reviews the trial court's determination as to the admissibility of evidence under the abuse of discretion standard. (People v. Alvarez (1996) 14 Cal. 4th 155, 201.)

Defendant argues that "the need for vindication [for Lidia and her mother Doris S.] arises because their allegations were not believed by" the jury in the previous trial, and that "[t]o tell the instant jurors simply that the previous jury did not reach a decision completely neuters the motive evidence at issue into an ambiguous and meaningless piece of information. A split of 11 to 1 in favor of acquittal provides a clear basis for an inference of an impeaching motive, and this is the information that should have been conveyed to the current jurors in order to properly assess the testimony of L[idia] and of Doris S."

Resp. Ex. 6 at 10-12.

The Court of Appeal determined that the trial court did not abuse its discretion in

excluding the numerical split as irrelevant. It reasoned as follows:

Case No.: 5:15-cv-02348-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

6

> As defendant points out, the jury's failure to reach a verdict in the previous case may have provided a motive for Lidia and her mother "to fabricate or exaggerate" their testimony to ensure a conviction in the present trial. However, this motive existed regardless of the numerical split of the jury. Moreover, to the extent that Lidia and her mother fabricated or exaggerated their testimony, their testimony from the trial in 1999 provided a much stronger basis for impeachment. Thus, the trial court did not abuse its discretion in excluding this evidence.

Id. at 12.

"The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.'" Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986). Therefore, in order to prevail on a Sixth Amendment claim for the denial of the right to cross-examine an adverse witness, Petitioner must show that he was "prohibited from engaging in otherwise appropriate cross examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" Davis, 415 U.S. at 318. The Confrontation Clause requires that the defendant have the opportunity to bring up any relevant evidence on cross examination. Van Arsdall, 475 U.S. at 679. Relevant evidence is "evidence having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." Cal. Evid. Code § 210. Courts consider whether the evidence flows "logically, naturally, and by reasonable inference" and whether it is needed to establish material facts such as "identity, intent, or motive." People v. Carter, 117 Cal. 3d 476, 511 (Cal. 2005). The Confrontation Clause allows for a defendant to have the opportunity for effective cross examination, but not any cross examination he wants. Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam). A trial court retains "wide latitude" to impose reasonable limits on cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Fensterer, 474 U.S. at 20.

Here, the Court of Appeal did not unreasonably apply federal law in rejecting Petitioner's

Case No.: 5:15-cv-02348-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

7

Sixth Amendment claim.[1] As reasoned by the Court of Appeal, the jury was informed that the outcome of the previous trial was a split jury, and it was no more relevant to know the actual numbers defining the numerical split. Resp. Ex. 6 at 12. The jury's failure to reach a verdict, in and of itself, was enough information to show that the witnesses who were a part of the other trial could have potential motive to "fabricate" or "exaggerate" evidence. Id. Doris S. even testified that she felt at times that justice had not been served because of the outcome of Lidia's trial, illustrating just as much motive as questioning her on the specific numerical outcome of the split would have shown. Id. at 7. Viewed in this light, the numerical split was irrelevant. Accordingly, it was not unreasonable for the Court of Appeal to determine that the trial court's refusal to admit this evidence did not violate Petitioner's Sixth Amendment rights.

      Bolstering this conclusion is the fact that, at trial, Petitioner's counsel could not give a clear reason as to why the numerical split itself would be relevant. Petitioner's counsel said, "I hadn't thought about it as to whether or not the split, the numbers of the split made a difference. I think the fact they didn't get a conviction based on what she originally alleged, would go to bias and credibility, which would be relevant to the jury, whether or not the numbers were relevant . . . ." Id. Petitioner's counsel later said, "So I don't know if there's a real distinction as to the numbers." Id. The trial court used its "wide" latitude of discretion and determined that the numerical split was not "relevant" in determining motive. Fensterer, 474 U.S. at 20. As such, it was not a piece of evidence Petitioner has a right to cross-examine witnesses about. For this reason as well, the Court of Appeal reasonably determined that Petitioner was not denied his Sixth Amendment rights.

      It is also no answer that the numerical split was needed to show the degree of impartiality

---

[1] The Court of Appeal's rejection of Petitioner's Sixth Amendment claim was implicit. "When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits," and thus the claim must be reviewed deferentially under 28 U.S.C. § 2254(d). Johnson v. Williams, 133 S. Ct. 1088, 1096 (2013). This rebuttable presumption "is a strong one that may be rebutted only in unusual circumstances." Id. Here, Petitioner does not appear to dispute that the Court of Appeal rejected his constitutional claim on the merits, much less rebut the presumption that this is the case.

Case No.: 5:15-cv-02348-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

8

lacking in an adverse witness. Petitioner claims the numerical outcome would show a motive to "fabricate" or "exaggerate," but has failed to establish that it would show *more* motive than would have already been pointed out by the fact that the jury did not reach a verdict. Dkt. No. 1 at 22. Therefore, the intensity of that motive and the fact that it was established by the jury not coming to a decision *was* expressed to the jury in the present case. Absent Petitioner giving a specific reason as to why the numbers themselves show more of a motive, there is no possibility the appellate court affirmed the decision unreasonably. Therefore, the Court of Appeal did not unreasonably determine that Petitioner's Sixth Amendment Rights were not violated.

### B. Claim Two

Petitioner's second claim is that he was denied due process because his prosecution in this case followed his prosecution in Lidia's trial, which violated California Penal Code § 654. Pet. at 23-24. Petitioner contends that this violation of § 654 denied him due process under Hicks v. Oklahoma, 447 U.S. 343, 346 (1980) because § 654 provides a state law guarantee of an important liberty interest. Id. at 24, 29.

California Penal Code § 654 bars multiple prosecutions and punishments for the same act, omission, or course of conduct. Neal v. State, 357 Cal. 2d 839, 843 (Cal. 1960); Kellett v. Superior Court, 409 Cal. 2d 206, 208 (Cal. 1966). In Kellett, the California Supreme Court held that under § 654, the failure to unite all offenses in the same act or course of conduct "will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence." 63 Cal. 2d at 827 (footnote omitted). However, there is an exception to this rule, which allows for separate punishments for counts that were part of the same act, omission, or course of conduct if the prosecution shows the government acted diligently but was unable to uncover evidence that would allow a court to sustain the greater charge. People v. Davis 115 Cal. 3d 417, 449-50 (Cal. 2005). When that is the case, the court can disregard § 654's rule barring multiple prosecutions and punishments. Id.

Here, the Court of Appeal rejected Petitioner's claim, reasoning that the case fell into the

exception to the Kellett rule:

> Here, there is substantial evidence to support the trial court's implied finding that despite the prosecution's due diligence in its investigation of charges involving Melissa, it was unable to discover sufficient facts to sustain the charges involving Melissa. The police identified Melissa as a possible victim and learned of a multiple hearsay statement that she had made to her father and immediately recanted. An officer then attempted to interview her, but she refused to speak to him. Since Lidia had not observed defendant molesting Melissa, Melissa's cooperation with the police at that time was essential to the prosecution of charges involving her as a victim. Defendant argues, however, that due diligence required "a specialist trained in the investigative and interviewing techniques appropriate and effective in these type of cases" to conduct Melissa's interview. In our view, it is entirely speculative as to whether Melissa would have revealed the molestation to anyone else at that time, particularly since she did not disclose defendant's conduct until she was in therapy approximately 10 years after the offenses were committed.

Resp. Ex. 6 at 9-10.

Additionally, § 654 only applies if the cases are all part of the same act, omission, or course of conduct. The Court of Appeal also determined that these counts would not fall into the same act, omission, or course of conduct, reasoning:

> Moreover, the two cases do not fall within the Kellett rule. In 1998, defendant was charged with one act of lewd conduct with Lidia, three acts of sexual penetration against Lidia, and three acts of sexual penetration by force against Lidia. The present case involved four acts of sexual penetration against Melissa. Though the acts against both girls allegedly occurred at various times between 1996 and 1998 at defendant's residence, the acts were separate and distinct acts of sexual penetration against separate victims. Thus, the two cases were not "too interrelated to permit their being prosecuted successively." (Kellett, supra, 63 Cal. 2d at p. 827.)

Id. at 10.

The "state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76 (2005). Thus, this Court is bound by the state courts' interpretation of § 654.

Nevertheless, "[w]hen [] a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication—and federal courts will review the application of those

constitutionally required procedures." Swarthout v. Cooke, 562 U.S. 216, 220 (2011). The standard due process analysis "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." Id. at 219. "Because the only federal right at issue is procedural, the relevant inquiry is what process [defendants] received, not whether the state court decided the case correctly." Id. at 222.

In the context of punishments, a state cannot arbitrarily deprive a defendant of a state sentencing procedure without violating due process. Hicks, 447 U.S. at 346. However, federal courts must defer to the state courts' interpretation of state sentencing laws. See Bueno v. Hallahan, 988 F.2d 86, 88 (9th Cir. 1993). "Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief." Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994).

Here, there was no fundamental unfairness in how the state courts chose to apply § 654. The trial court and the appellate court reviewed precedent and found two theories under which Petitioner's conduct would not violate § 654 – (1) the government was diligent but was unable to develop evidence to pursue Melissa's case at the time of Lidia's trial and (2) the cases include completely separate acts that can be punished separately. Resp. Ex. 6 at 9-10. In terms of the Kellett exception, the court reasonably determined Melissa was unwilling to discuss her sexual assaults until about ten years after the events – so the information about Melissa's sexual assaults was not available at the time of Lidia's trial. Id. Given the fact that Melissa recanted her initial admission to her father that she had been sexually assaulted and the fact that she refused to be interviewed by police officers around the time of Lidia's trial, the government did not have additional information from Melissa until she decided to speak out about what happened to her a decade later. Id. In terms of the state courts concluding the cases included separate acts, Melissa and Lidia are separate individuals who endured multiple separate acts of sexual assault and penetration – so the acts are distinctly different as to each individual. Id. at 11. Therefore, the

Case No.: 5:15-cv-02348-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

11

1 prosecution would not be barred from proceeding in the instant case.

2 It is also not the case that Petitioner received constitutionally inadequate process. Here, Petitioner moved to dismiss the charges pursuant to § 654 and Kellett, the prosecution filed an opposition, Petitioner filed two supplemental memoranda, and the trial court heard two days of testimony and argument. Resp. Ex. 1 at 180-227, 230-33, 284-305, 308-317; Ex. 2 at 3-32, 43-53; Dkt. No. 10. This afforded Petitioner sufficient notice and opportunity to be heard on the question of whether he was entitled to relief under § 654. As such, he was not denied due process.

In conclusion, the Court finds that Petitioner does not raise any viable claims upon which habeas relief can be granted. Therefore, Petitioner is not entitled to relief under § 2254.

## V.    CONCLUSION

After a careful review of the record and pertinent law, the Court concludes that the Petition for Writ of Habeas Corpus must be DENIED.

Further, a Certificate of Appealability is DENIED. See Rule 11(a) of the Rules Governing Section 2254 Cases. Petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure. See Rule 11(a) of the Rules Governing Section 2254 Cases.

The clerk shall terminate any pending motions, enter judgment in favor of Respondent, and close the file.

**IT IS SO ORDERED.**

Dated: July 17, 2018

EDWARD J. DAVILA

Case No.: 5:15-cv-02348-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

United States District Judge

Case No.: 5:15-cv-02348-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

13